FILED

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA

**Tampa Division**

2020 MAR -9  AM 11: 26

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

JOSEPH MCCLASH, JOE KANE,
LINDA MOLTO, JANE VON HAHMANN,

 Plaintiffs,

Case No

v.                                    8:2020 cv 543 T36 AEp

FLORIDA DEPARTMENT OF TRANSPORTATION;
(KEVIN J. THIBAULT, as Secretary of the
Florida Department of Transportation),
Federal Transportation Authority/
United States Department of Transportation;
Nicole R. Nason, Administrator

 Defendants.

---

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This action arises out of decisions by FDOT, a state agency took

approving, the Location and Design Concept Acceptance (LDCA) for

SR 684 (Cortez Bridge and Approaches) Project Development &

Environment Study, PROJECT NAME described as SR 684 (Cortez

Bridge and Approaches) Project Development & Environment (PD&E)

Study on State Road (SR) 684 (Cortez Road) from SR 789 (Gulf

Drive) to 123rd Street West. FDOT's actions were authorized by

1

FS. 334.044, granting FDOT, as a state agency to take action for
assuming requirements under a memorandum of understanding (MOU)
with the United States Department of Transportation entered into
December 14, 2016.

F.S. 334.044(34) states;  Powers and duties of the department.—

> *"To assume the responsibilities of the United States*
> *Department of Transportation with respect to highway*
> *projects within the state under the National Environmental*
> *Policy Act of 1969, 42 U.S.C. ss. 4321 et seq., and with*
> *respect to related responsibilities for environmental*
> *review, consultation, or other action required under any*
> *federal environmental law pertaining to review or approval*
> *of a highway project within the state. The department may*
> *assume responsibilities under 23 U.S.C. s. 327 and enter*
> *into one or more agreements, including memoranda of*
> *understanding, with the United States Secretary of*
> *Transportation related to the federal surface*
> *transportation project delivery program for the delivery of*
> *highway projects, as provided by 23 U.S.C. s. 327. The*
> *department may adopt rules to implement this subsection and*
> *may adopt relevant federal environmental standards as the*
> *standards for this state for a program described in this*
> *subsection. Sovereign immunity from civil suit in federal*

2

*court is waived consistent with 23 U.S.C. s. 327 and*
*limited to the compliance, discharge, or enforcement of a*
*responsibility assumed by the department under this*
*subsection."*

Plaintiffs bring this suit to enforce federal law for the
federal surface transportation project delivery program for the
delivery of highway projects, as provided by 23 U.S.C. s. 327.,
specifically the Location and Design Concept Acceptance (LDCA)
for SR 684 (Cortez Bridge and Approaches) Project Development &
Environment Study for which the FDOT determined that a 65 foot
fixed bridge would replace the existing drawbridge. A decsion
that impacts the Plaintiffs. Plaintiffs challenge the Type 2
Categorical Exclusion Determination, requiring consideration of
specific significant impacts, met federal regulations.  A 35
foot drawbridge was another viable option, this option would
provide relief to the Plaintiffs and demonstrates a plausible
relief without causing significant impacts.( "state a claim to
relief that is plausible on its face." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 557 (2007)).

The MOU, assigns FHWA responsibilities under the National
Environmental Policy Act of 1969, 42 U.S.C.- 4321 (NEPA) for
federally funded highway projects to FDOT such as the Cortez
Bridge Replacement. Under NEPA assignment, FDOT will be legally

responsible for ensuring that all federally funded highway
projects continue to comply with all aspects of NEPA prior to
approving any related NEPA documents.

Pursuant to 23 U.S.C. s. 327©(3)(B),(C), and subpart 4.4 of the
MOU provides third parties the right to challenge FDOT's action
in carrying out its environmental review. Plaintiffs properly
bring forth this challenge.


## INTRODUCTION


1. The Village of Cortez is a historic village with many
federally designated historical structures. The structures and
character of the community is very important to remain intact
since it is one of the last fishing villages remaining in
Florida.

2.   The 65 foot fixed bridge FDOT decided to replace the
existing drawbridge will extend past the waterbody known as
Sarasota Bay and into the historical village of Cortez with a
massive concrete walled structure.

3.   The massive structure will divide an intact community,
a community of lower income residents mainly seniors( violating
EO 12898). This massive structure will also alter existing

traffic patterns, change noise levels from the existing ground roads requiring noise walls.

4.    The 65 foot fixed bridge increases in elevation at a grade of 5 percent, challenging seniors that currently walk and ride bikes on the existing bridge. Furthermore the increase height of the bridge would increase the pedestrian path several hundred feet past the existing bridge causing undue hardship, especially for the elderly and the handicap.

5.    The aesthetics of the community will be severely altered within the historical village of Cortez and another historic area within the City of Bradenton Beach where the bridge would terminate on the barrier island known as Anna Maria Island.

6.    Several businesses within the village of Cortez will be impacted by eliminating a direct connection to a roadway at ground level for a new road connection several hundred feet away. This elevated massive structure replacing the ground level roadway will also cause lack of visibility for the businesses.

7.    A 65 foot fixed bridge would have further economic impacts by restricting vessels that would no longer fit under a fixed bridge versus the existing drawbridge. These restrictions could exceed five percent of all vessel traffic.

8.    The village of Cortez is within a Flood area. The massive structure of a 65 foot fixed bridge would produce

increase impacts to adjacent properties from wave action against this wall and wave attenuation. None of these impacts were modelled, which could cause significant changes in water interaction with land and existing structures.

9.   FDOT had another bridge option that would not have any impacts described above to replace the existing drawbridge. A 35 foot drawbridge would actually have a grade that would not be as steep, no massive walls, would not restrict vessels and would not divide a historical community the local government has implemented codes to protect and preserve.

10.   The 65 foot High Level-Fixed Bridge accepted by FDOT did not meet the requirements required for the action by FDOT for the Location and Design Concept Acceptance (LDCA) for SR 684 (Cortez Bridge and Approaches) Project Development & Environment Study pursuant to *23 United States Code (U.S.C.) § 327* and the implementing Memorandum of Understanding (MOU) executed on December 14, 2016, the Florida Department of Transportation (FDOT).

11.   An important part of the PD&E Study to comply with Council on Environmental Quality (CEQ) regulations 40 Code of Federal Regulations (CFR) §§ 1500-1508, which requires federal agencies to use all practicable means, consistent with the requirements of the NEPA, to avoid or minimize any possible

adverse effects of their actions upon the quality of the human environment.

12.   In summary, the 65 foot High Level-Fixed Bridge approved by FDOT would have more impacts than the PD&E study represented; dividing an intact neighborhood, dividing and creating negative aesthetic impacts to a Federally designated Historical District, direct, indirect, and cumulative impacts to the last remaining working fishing village on the west coast of Florida, create an unsafe roadway intersection, restrict vessels, and create other undisclosed direct, indirect, cumulative impacts such as tax base reductions.

13.   The 65 foot High Level-Fixed Bridge does not meet the criteria and vision within the Manatee County Land Development Codes and the vision for Historical Village of Cortez.

14.   Plaintiffs challenge these agency actions as unlawful under the NEPA, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. FDOT violated NEPA and acted arbitrarily and capriciously when they determined that the Project will have no significant impact on the human environment and approved the project without preparing an Environmental Impact Statement.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over the claims for relief in this action pursuant to 5 U.S.C. §§ 701-706 (actions under the APA); 28 U.S.C. § 1331 (actions arising under the laws of the United States); 28 U.S.C. § 1361 (actions to compel an officer of the United States to perform his or her duty); and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments and injunctive relief).

**16.** Venue lies in this judicial district by virtue of 28 U.S.C. § 1391(e) because this is a civil action in which officers or employees of the United States or an agency thereof are acting in their official capacity or under color of legal authority and Plaintiffs resides here.

## PARTIES

**Plaintiffs,**

17. JOSEPH MCCLASH, asserts standing that the proposed action of a 65 foot High Level-Fixed Bridge immediately affects the petitioner's substantial interest in the use of the navigation waters at the Cortez Bridge with a sailboat having a mast height of 60 feet, and a use within the zone of interest that the statutes, rules and proceeding are intended to protect,

and will pose an immediate threat of an injury to him by
limiting his future use of the navigational waters he has
enjoyed for over 30 years and plans to use in the future. The
action creates harm to the aesthetic areas he enjoys surrounding
the Cortez Bridge, and future use (a 35 foot bascule bridge
would not cause these impacts to his use). McClash also owns
property at 115 Street and Cortez Road. Petitioner JOSEPH
MCCLASH whose home and mailing address is 711 89 St NW,
Bradenton Florida, made comments to FDOT, and is a citizen who
resides in Manatee County, Florida. As a County Commissioner in
representing bridge options to Anna Maria Island, he was
involved in a compromise that the Anna Maria Bridge on SR64
would be a fixed bridge and the Cortez Bridge a drawbridge to
avoid future challenges.  This agreement involved FDOT, Katie
Pierola as Mayor of the City of Bradenton Beach, and Mr. McClash
in the early 1990's.


18.   Jane von Hahmann, asserts standing that the proposed
action immediately affects the petitioner's substantial
interest, has made comments and attended hearings, and has
resided at 4428 119th St. W. in the village of Cortez for 43
years, owns commercial and residential rental property in the
village around 119th St W and 124th St.Ct.W. in Cortez. This
action within her zone of interest, impacts her quality of life,

9

her environment, financial wellbeing and the preservation of the
intact village (neighborhood) of Cortez she currently enjoys and
intends to do so in the future.

19.    Joe Kane is a resident of Cortez for over 20 years,
the action is within the zone of interest, the proposed action
immediately affects his substantial interest, has made comments
and attended hearings, and resides at Fewville, named after the
Few family,12004 45 Avenue W. Cortez 34215.  It's a tiny village
within the historical village of Cortez, with a grass driveway
that's lined with royal palms. Kane is senior and a low income
resident with physical limitations. The 65 foot High Level-Fixed
Bridge agency action decision will impact his mobility, and his
quality of life he currently enjoys and intends to do so in the
future, versus a 35 foot bascule bridge that would not impact
his life.

20.    Linda Molto is a 32 year resident of Cortez, the
action is within the zone of interest, the proposed action
immediately affects her substantial interest she currently
enjoys and intends to do so in the future, has made comments and
attended hearings, residing at 4519 124th St. W. Cortez FL in
the Pringle house; one of the oldest houses in the village.
Originally a shop and then a post office, it was purchased by

Lemuel and Bessie Pringle after the 1921 hurricane. The 65 foot High Level-Fixed Bridge decision will impact her directly at the base of the 65 foot bridge, creating a dangerous intersection of offsetting streets, with no safe pedestrian crossing, and with unacceptable increase in noise levels. This impacts her quality of life versus a 35 foot drawbridge that would not impact or change her life. The 65 foot High Level-Fixed Bridge creates a divide in her neighborhood with a wall like structure, increases the distance of the bridge which would impact her mobility walking to Bradenton Beach, and changes the aesthetics of the village of Cortez in contravention of the County's Land Use restrictions. Ms Molto is a senior and a low income resident which the bridge will impact.

**Defendants,**

21.   Defendant Florida Department of Transportation (FDOT) is an agency created under Florida law responsible for the planning and development of the state's public transportation system. Pursuant to a Memorandum of Understanding between the FDOT and the Federal Highway Administration dated December 14, 2016, FDOT has assumed the U.S. Department of Transportation's responsibilities under NEPA to conduct environmental review and consultation for certain highway projects within the state, including the project at issue in this case. FDOT issued the

Categorical Exclusion for the 65 foot fixed bridge and approved the LDCA, and responsible for compliance with 23 U.S.C. s. 327 and NEPA.

22.   Defendant Kevin J. Thibault is the Secretary of FDOT and highest-ranking official responsible for actions taken by FDOT, including compliance with NEPA. Defendant Thibault is sued in his official capacity only. Defendant Thibault and Defendant FDOT will collectively be referred to as FDOT.

23.   Federal Transportation Authority within the United States Department of Transportation(FHWA) is a federal agency charged with the federal surface transportation project delivery program for the delivery of highway projects, as provided by 23 U.S.C. s. 327., specifically the Location and Design Concept Acceptance (LDCA), and compliance with NEPA.

**24.**   Nicole R. Nason, Administrator is the highest-ranking official responsible for actions taken by United States Department of Transportation and the Federal Highway Administration, including compliance with and implementation of the LCDA as provided by 23 U.S.C. s. 327 and compliance with NEPA. Defendant Nicole R. Nason is sued in her official capacity

only. Defendant Nason and Defendant FHWA will collectively be referred to as FHWA.

## **Standing**

25.     JOSEPH MCCLASH, JOE KANE, LINDA MOLTO, JANE VON HAHMANN, all are pro se parties initiating the proceeding, and provide evidence how their substantial interest would be adversely affected by the agency action. All Plaintiffs live in Manatee County; the agency action approving the LDCA is within Manatee County and within the zone of interest of appellants. FDOT's action is now final and ripe for challenge.

26.     All Petitioners use the area within and surrounding the proposed Cortez Bridge and or have a substantial interest in the action of the decision by FDOT and would be immediately impacted by the 65 foot High Level-Fixed Bridge replacement bridge and within Zone of Interest.

27.     Paragraphs 17- 20 are incorporated here, and represent sufficient injuries-in-fact, that this relief can cure.

28.     NEPA's primary purpose is environmental protection. 42 U.S.C. § 4321 (declaring Congress's purpose in enacting NEPA to include "encourag[ing] productive and enjoyable harmony between man and his environment" and "promot[ing] efforts which will

prevent or eliminate damage to the environment"); 40 C.F.R. §
1500.1(c) (illuminating that NEPA is intended to help public
officials "take actions that protect, restore, and enhance the
environment").

29.    NEPA additionally intends to advance the "human
environment," which consists expansively of "the natural and
physical environment and the relationship of people with that
environment." 40 C.F.R. § 1508.14. See also Region 8 Forest
Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807–09
(11th Cir. 1993) (recognizing an economic component to NEPA).
Accordingly, NEPA's zone of interests can be said to include the
environment, quality of life, land use and resource management,
economic growth, and public health and safety.

30.    Plaintiffs make claims herein that the Defendants'
decision for a 65 foot fixed bridge(LDCA) violates the law and
intent of Congress, and are "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law." 5 U.S.C. §
706(2)(A).


## FACTUAL BACKGROUND


31. At issue is the environmental review, consultation,
and other actions required by the State of Florida, applicable
federal environmental laws for this project that were, or have

been, carried out by FDOT pursuant to 23 U.S.C. §327 and a
Memorandum of Understanding dated December 14, 2016 and executed
by the Federal Highway Administration and FDOT resulting in the
acceptance(approval) of the 65 foot High Level-Fixed Bridge as
the preferred alternative for replacement of the existing
structure, essentially permitting a 65 foot bridge.

32.   The county in which the subject matter is located:
Manatee County, Florida.

33.   The existing bridge and the replacement proposed
connect the mainland at the Historical Village of Cortez crosses
over Sarasota Bay and connect to the Anna Maria Island in the
City of Bradenton Beach. The replacement for the 65 foot fixed
bridge and the option of the 35 foot drawbridge would cross the
bay in the same location, except the 65 foot bridge impacts the
Historical Village of Cortez with a massive wall at the bay
continuing several hundred feet within the village, changing the
aesthetics and impacting the harmony of man and the environment.

34.   The LDCA documented the evaluation of the No-Build
(Repair), Rehabilitation, and Replacement Alternatives for the
existing low-level drawbridge over Sarasota Bay. The study
concluded that the Preferred Alternative is the replacement of
the existing bridge with the 65-foot High-Level Fixed Bridge
over another viable option the 35 foot bridge.

35.   The FDOT held hearings on the bridge and obtained surveys from the community. The majority of the responses did not want a new bridge or the 65 foot fixed bridge FDOT at issue.

36.   FDOT in the preparation to reach its decision for the LDCA summarized only the people for either the 65 foot fixed bridge or the 35 foot drawbridge, creating an arbitrary decision based on partial results.

37.   The options evaluated represented cost for each option, the 65 foot bridge was the lowest cost option by several million dollars compared to the 35 foot drawbridge. FDOT in the 1990's also tried to replace the existing Cortez Bridge with a 65 foot fixed bridge against the community's concerns. This fixed bridge was never built.

38.   There is a question if FDOT's decision for the 65 foot fixed bridge was with prejudice from its prior determination and prejudice by deciding on an option that was the least cost at the expense of the community.

39.   FDOT approved the LDCA on September 18, 2019 as stated in an ad, however the general public was unaware of the decision until on or about October 15, 2019.



## ANNOUNCEMENT OF
## LOCATION AND DESIGN CONCEPT ACCEPTANCE

### CORTEZ BRIDGE PD&E STUDY
### From SR 789 (Gulf Drive) to 123rd Street West
### Manatee County, Florida

Financial Management # 430204-1-22-01
Efficient Transportation Decision Making (ETDM) #13568
Federal-Aid Project Number 8886-227-A

On September 18, 2019 the Florida Department of Transportation (FDOT) granted Location and Design Concept Acceptance for Cortez Bridge on State Road (SR) 684 from SR 789 (Gulf Drive) to 123rd Street West. The proposed improvements include replacement of the existing two-lane undivided 21-foot low-level draw bridge with a two-lane 65-foot high-level fixed bridge, with the addition of 10-foot wide shoulders and 10-foot sidewalks in each direction. Approval of the recommended alternative is the result of the PD&E study that evaluated various alternatives for the bridge including the No-Build Alternative. The study included environmental and engineering analyses, a public involvement program, and interagency coordination. This project is now eligible for and will proceed to the next phase of development, the design phase, where construction plans are prepared.

The environmental review, consultation, and other actions required by applicable federal environmental laws for this project are being, or have been, carried out by FDOT pursuant to 23 U.S.C. §327 and a Memorandum of Understanding dated December 14, 2016 and executed by the Federal Highway Administration and FDOT.

Final project documents and additional information is available on the project website at www.CortezBridge.com.

40. FDOT approved the Type 2 Categorical Exclusion on September 18, 2019, but never made this decision available to the public. Even if found on the website after the date the link attachments require a password not made available to the public, preventing the public to view.

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

850-050-11
ENVIRONMENTAL MANAGEMENT
09-18

## TYPE 2 CATEGORICAL EXCLUSION
## DETERMINATION FORM

### 1.   PROJECT DESCRIPTION AND PURPOSE AND NEED

**a.  Project Information**

County: Manatee County
Project Name: SR 684 FROM SR 789 (GULF DRIVE) TO 123RD STREET WEST
Project Limits: SR 789 (Gulf Drive) to 123rd Street West
Project Numbers:

| 13568 | 430204-1-22-01 | 8886-227-A |
|---|---|---|
| ETDM (if applicable) | Financial Management | Federal-Aid |

September 18, 2019

Jason Watts                                                           Date
Director of the Office of Environmental Management or Designee

### 8.   SUPPORTING INFORMATION

1   43020412201-CE2-D1-Project_location_map-2019-0315.pdf
2   43020412201-CE2-D1-CE2_Cortez_Bridge_w_appendices-2019-0903.pdf
3   43020412201-CE2-D1-CE_Appendix_A_-_Planning_Consistency-2019-0315.pdf
4   43020412201-CE2-D1-430204-1_Final_PER_W-Appendices-2019-0918.pdf
5   43020412201-CE2-D1-Public_Hearing_Transcript_Package_Cortez_Certified-2017-1113.pdf
6   43020412201-CE2-D1-430204-1_Public_Hearing_Certification-2019-0821.pdf



Username

Password



Forgot your Password?

Contact Us

Copyright ©2020 Florida Department of Transportation All Rights Reserved
For additional information, please e-mail questions or comments to Florida Department of Transportation Office

41.   The City of Bradenton Beach adopted a Resolution in opposition to the 65 foot fixed bridge on October 9ᵗʰ, 2019.

> **WHEREAS,** the City Commission of the City of Bradenton Beach supports FDOT and its efforts to reconstruct Cortez Bridge; however, the Commission is opposed to the installation of a high-span bridge that will adversely impact historical buildings, property rights of its local citizenry and businesses, and change the character and ambiance of Anna Maria Island, Bradenton Beach and the Historic Village of Cortez; and

42.   Plaintiffs filed a Florida non-civil action, in a petition to FDOT challenging the decision for a 65 foot fixed bridge (LDCA), a process known as a Chapter 120 hearing for which an Administrative Hearing was requested October 29, 2019. FDOT ultimately denied the request for an Administrative hearing on December 10ᵗʰ, 2019, citing it lacked jurisdiction to allow an

Administrative Hearing under Florida Statue Chapter 120, and is typically considered the date the action of the LDCA would be considered final.

43. Plaintiffs challenged this Final Order of Dismissal, seeking relief from Florida's Second District Court of Appeals, arguing the FDOT's order was improper. No decision has been rendered by the Appeal Court as of date and not expected for several months.

44. Plaintiffs had a phone conference with FDOT on January 24th, 2020 discussing the legal paths to challenge FDOT's decision. Plaintiffs indicated it would file a challenge in the Federal Court and also continue the appeal to determine the question of law as to Florida's law as it relates to a Chapter 120 challenge.

45. FDOT under the MOU must comply with 23 U.S.C. §327, including Executive Order 12898 for which the Plaintiffs' challenge FDOT failed to do within the petition filed with FDOT in its non-civil litigation and herein.

46. The viable option replacing the existing low level drawbridge with a 35 foot drawbridge  would eliminate the impacts to the Plaintiffs and comply with 23 U.S.C. §327 and the Memorandum of Understanding dated December 14, 2016 with the Federal Highway Administration, specifically those requiring the approval of the LDCA.

# LEGAL LANDSCAPE

47.   Under the Memorandum of Understanding (MOU) executed on December 14, 2016, the Florida Department of Transportation (FDOT), section 4.3 FDOT assumes federal jurisdiction for the Surface transportation project delivery program under <u>23 U.S. Code § 327(c)(3)(B)and (d) District Courts have exclusive jurisdiction over this civil action.</u> FDOT has waived immunity under this MOU.

## National Environmental Policy Act

48.   The National Environmental Policy Act of 1969 (NEPA) is the "basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). "The NEPA process is intended to help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." Id. § 1500.1(c).

49.   The Council on Environmental Quality (CEQ) has promulgated rules implementing NEPA. These rules apply to all

federal agencies, including the Corps, the FHWA and the FWHA's state designees. See 40 C.F.R. pt. 1500.

**50.** NEPA requires federal agencies to prepare an environmental impact statement (EIS) for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). "Major federal actions" include both "new and continuing activities" with "effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. The "human environment" includes "the natural and physical environment and the relationship of people with that environment." Id. § 1508.**14.**

51.     Under the Surface Transportation Project Delivery Program, the Secretary of the U.S. Department of Transportation may assign the FHWA's responsibilities under NEPA to the States through a memorandum of understanding. 23 U.S.C § 327(a)(2)(A). When FHWA's NEPA responsibilities are assigned to a State entity, federal courts retain jurisdiction over suits against the State entity to enforce those NEPA responsibilities. Id. § 327(c)(3)(B).

52.     The FHWA has assigned its NEPA responsibilities to FDOT for road projects like the ones challenged in this action in a December 14, 2016 Memorandum of Understanding.

**Florida Statutes provide FDOT authorization to assume powers of the United States Department of Transportation**

53.     Florida Statute 334.044(Florida Law Chapter 2016 -181) Powers and duties of the department; powers and duties.—The department shall have the following general powers and duties:(34) To assume the responsibilities of the United States Department of Transportation with respect to highway projects within the state under the National Environmental Policy Act of 1969, 42 U.S.C. ss. 4321 et seq., and with respect to related responsibilities for environmental review, consultation, or other action required under any federal environmental law pertaining to review or approval of a highway project within the state. The department may assume responsibilities under 23 U.S.C. s. 327 and enter into one or more agreements, including memoranda of understanding, with the United States Secretary of Transportation related to the federal surface transportation project delivery program for the delivery of highway projects, as provided by 23 U.S.C. s. 327. Sovereign immunity from civil suit in federal court is waived consistent with 23 U.S.C. s. 327 and limited to the compliance, discharge, or enforcement of a responsibility assumed by the department under this subsection.

**Administrative Procedure Act**

54.   The Administrative Procedure Act (APA) grants a right of judicial review of final agency actions to any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702.

55.   Under the APA, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

56.   The FDOT decision deciding a 65 foot fixed bridge over the 35 foot drawbridge known as the LDCA, , and FDOT's categorical exclusion are "agency actions" subject to judicial review under the APA.

## FIRST CLAIM FOR RELIEF

### (FDOT in its analysis failed to comply with NEPA requirements for a socio-cultural effects evaluation (SCE) process)

57.   Plaintiffs reallege and incorporate by reference allegations contained in paragraphs 1-14 of this Complaint.

58.   FDOT in its analysis failed to comply with the requirements for a socio-cultural effects evaluation (SCE)

process assessing social, economic, land use changes, mobility,
aesthetics effects and relocations, including potential issues
associated with Environmental Justice, Civil Rights, and other
nondiscrimination laws, and whether the project benefits and
effects on communities were assessed in the SCE evaluation with
special consideration for minority, low-income, and other
potentially under-represented populations, and its decision
described herein is arbitrary, capricious, an abuse of
discretion, not in accordance with law, and/or without
observance of procedure required by law within the meaning of
the APA, 5 U.S.C. § 706(2), and pursuant to 23 United States
Code (U.S.C.) § 327 .

59.   FDOT in its analysis failed to comply with the
requirements for a socio-cultural effects (SCE) information
gathered through a SCE evaluation process and failed to carry
forward and use this information as required to support a
decision of acceptance of the location and design concept of a
65 foot High Level-Fixed Bridge.

60.   FDOT in its analysis failed to comply with the
requirements for a SCE evaluation process, an important part of
the PD&E Study to comply with Council on Environmental Quality
(CEQ) regulations 40 Code of Federal Regulations (CFR) §§ 1500-
1508, which requires federal agencies to use all practicable
means, consistent with the requirements of the NEPA, to avoid or

minimize any possible adverse effects of their actions upon the quality of the human environment. Listed are the requirements to evaluate:

**Social**
- Demographics
- Community Cohesion
- Safety/Emergency Response
- Community Goals
- Quality of Life
- Special Community Designations

**Economic**
- Business & Employment
- Tax Base
- Traffic Patterns
- Business Access
- Special Needs Patrons

**Land Use Changes**
- Land Use – Urban Form
- Local Plan Consistency
- Open Space
- Sprawl
- Focal Points

**Mobility**
- Modal Choices
  o Pedestrian
  o Bicyclists
  o Transit
- Transportation Disadvantaged
- Connectivity
- Traffic Circulation
- Public Parking

**Aesthetic Effects**
- Noise/Vibration
- View-shed
- Compatibility

**Relocation Potential**
- Residential
- Non-Residential
- Public Facilities

61.     FDOT in its analysis failed to comply with the requirements for the SCE evaluation that considers potential effects, both positive and negative, on the socio-cultural (or human) environment including Environmental Justice, Civil Rights, and related issues.

62.  FDOT in its PD&E failed to consider the six SCE issues required to be discussed in the Environmental Document to show

when and how they were considered in project decision making. Even if no involvement for a particular issue is indicated, then a statement to that effect must be included in the Environmental Document which does not appear to exist. The six issues are within Table 4-2 -Topic No. 650-000-001 Project Development and Environment Manual Socio-cultural Effects Evaluation Effective: January 14, 2019

63.   FDOT in its PD&E failed to consider the three general types of effects evaluated as defined by CEQ regulations 40 CFR §§ 1500-1508: Direct, indirect and cumulative effects.

64.   FDOT in its PD&E failed to consider and accurately determine "Neighborhoods (or portions thereof) will not be isolated as existing side street and driveway access will be maintained to the extent practicable, or replaced/relocated as necessary." The 65 foot bridge creates a wall between north and south Cortez, isolating neighborhoods.

65.   FDOT in its analysis failed to consider if there is a disproportionately high and adverse effect on minority or low-income populations, after taking benefits and mitigation into account, evaluate whether there are practicable mitigation measures or alternatives that would avoid or reduce the disproportionately high and adverse effects [USDOT Order 5610.2(a)]. No detailed income analysis was done for the

specific areas within the village of Cortez impacted by the 65 foot fixed bridge.

66.    FDOT in its analysis failed to accurately evaluate the significant impacts to the society and economic impacts to the historical village of Cortez. The 35 foot drawbridge with different project limits than the 65 foot high level fixed bridge will not have significant impacts on the village of Cortez.

67.  A decision in favor of a 35 foot drawbridge would not impact this population versus the decision made for a 65 foot high-level bridge, and is the proper relief sought, and requested.


## SECOND CLAIM FOR RELIEF

**(FDOT failed to comply with NEPA requirements its Project Development and Environment review for AESTHETIC EFFECTS)**


68.   The process outlined in the *Project Development and Environment (PD&E) Manual* is the Florida Department of Transportation's (FDOT's) procedure for complying with the *National Environmental Policy Act (NEPA) of 1969, Title 42 United States Code (U.S.C.) § 4321, et seq.*, and associated federal and state laws and regulations. This manual is

referenced herein and provides a legal framework for FDOT to comply with its assumption of NEPA.

69.   FDOT in its analysis failed to comply with the requirements within Project Development and Environment Manual PART 2, CHAPTER 5 for AESTHETIC EFFECTS including the impacts of a massive wall and the effect on residential structures and preservation especially given the Federal Historic District designation of Cortez including:

1. Noise and or vibration impacts to sensitive sites near the project.

2. The project is likely to affect vistas and or view-sheds.

3. The project will not blend visually with the area.

4. The project is adjacent to many community focal points.

5. The project was not likely perceived as being compatible and in character with the community's aesthetic values.

6. The 65 foot fixed bridge and its feature(s), are perceived by   the community as inconsistent with the character of the community.

70.    FDOT in its analysis failed to comply with its analysis of the PD&E to accurately determine that "Overall, land use changes are not expected to be significant." The land to the south of the 65 foot High Level-Fixed Bridge will impact residences, diminishing quality of life with an aesthetic change, increased noise and shading from a massive wall, causing a significant change in land use. The properties to the north will be impacted by Right of Way requirements, new road alignments and a massive wall and bridge structure a few feet from historical structures.

71.    FDOT in its analysis failed to comply with the consideration of noise barriers to mitigate traffic noise impacts. These barriers were not made part of the presentations and will cause further impact to the aesthetics and isolate neighborhoods. Since the 35 foot drawbridge and 65 foot High Level-Fixed Bridge have different design concepts, each concept noise impacts with mitigation should have been part of the public information required to comply with the PD&E requirements and failing to provide this critical information fails to provide a PD&E consistent with federal guidelines.

72.    Whether the FDOT in its analysis of the PD&E accurately determined that "Therefore, impacts to aesthetics effects are not expected to be significant." The structure of a

65 foot High Level-Fixed Bridge creates a 20 foot or higher wall, and the high rise bridge creates a commercial structure not in compliance with the County's land use vision for the historical village of Cortez and forever changes dramatically the view within the historical districts of Cortez and Bradenton Beach.

73.   A decision in favor of a 35 foot drawbridge would not significantly impact aesthetics versus the FDOT decision made for a 65 foot high-level bridge, and is the proper relief sought, and requested.

## THIRD CLAIM FOR RELIEF

**(FDOT in its Analysis and decision uses inaccurate data from surveys demonstrating a bias for a fixed bridge and fails to comply its own Policy manual for a PD&E to comply with NEPA )**

74.   During the PD&E Study, impacts are evaluated and engineering and environmental analysis is completed to verify that the COA determination is a Type 2 CE. Social, Cultural, Natural, and Physical issues/resources are evaluated using the pertinent chapters in *Part 2* of the *PD&E Manual, Topic No. 650-000-001* to satisfy applicable federal and state environmental

laws, regulations, and executive orders. The analysis should
focus on the relevant issues and those requiring findings. A
finding implies that a decision must be made or a signature is
needed by OEM, and/or an appropriate resource agency.

75.   Chapter 5 outlines the required processing and
documentation for Type 2 CE projects (Figure 5-1) and provides
guidance on completing the Type 2 Categorical Exclusion
Determination Form, Form No. 650-050-11. Information to
substantiate the impact determination of not significant, or
enhancement must be discussed in the Type 2 CE, added as
Technical Materials or attached to the form, as appropriate. A
project with a significant impact to any resource or issue
cannot be processed as a Type 2 CE.


76.   FDOT formal public hearings were bias towards a 65
foot High Level-Fixed Bridge and its decision was made with
prejudice, and ignoring the significant impacts to resources.

77.   FDOT in its analysis in favor of the 65 foot High
Level-Fixed Bridge slanted the data to create a false narrative
the fixed bridge had the majority support of the community,
stating as example - "Of the responses received, 50% favored the
No-Build (Repair) Alternative, and 38% favored bridge
replacement. Of the responses that favored replacement, 75%
favored the 65-foot High-Level Fixed-Bridge Alternative and 24%

favored the 35-foot Mid-Level Drawbridge Alternative." The
actual facts are that over 60 percent were opposed to the 65
foot replacement bridge not 75 percent in favor, when factoring
those who responded in favor of the "No-Build (Repair)
Alternative". This represents the 65 foot fixed bridge is a
significant impact to the community.

78.  FDOT failed in its analysis to represent accurately
the 65 foot High Level-Fixed Bridge is a minimum height and may
exceed 65 feet when permitted. The USCG has a minimum height
required of 65 feet which do not consider increase in future sea
levels. FDOT failed to demonstrate the significant impacts of a
70 foot or 75 foot bridge which could be what the final design
permits.

79.  FDOT failed in its analysis to represent accurately
the 65 foot bridge would restrict over 5 percent of the vessels
versus the 2 percent stated a significant impact. A 35 foot
drawbridge would not restrict any vessel height and not cause
significant impacts to vessels. The study also does not include
regional transit of vessels. Petitioner McClash has navigated
vessels with a mast height of 85 feet within the past few years.
The study does not record this mast height and states erroneous
information on draft of vessel versus mast height.

80.  FDOT failed in its analysis to represent accurately
the reduction in openings for a 35 foot drawbridge. The data for

bridge openings does not accurately depict future openings. No specific facts were included as to all the type of boats that passed in one opening. A 35 foot drawbridge could allow a decrease of openings for more than FDOT presented if the accurate facts were presented. A 35 foot drawbridge would reduce the existing bridge openings and reduce traffic impacts.

81.   FDOT failed in its analysis to represent accurately the level of service for the 65 foot High Level-Fixed Bridge compared to the 35 foot bridge. The traffic study for the level of service is not accurate. A fixed bridge with no openings has no fact to support the level of service improvements stated from D to B with a fixed bridge.

82.   FDOT failed in its analysis to represent accurately an improvement of travel delay stating an unrealistic value of 44.7 second delay per vehicle with a 35 foot drawbridge versus the 65 foot fixed bridge. This value also does not take into consideration actual conditions of delay due to traffic conditions on a barrier island with 2 lanes that cannot support the vehicles and causes traffic delays regardless of what type of bridge is constructed.

83.   FDOT within the PD&E document did not make as required, a Determination of No Adverse Effects with a statement specifically required - "No minority or low-income populations have been identified that would be adversely impacted by the

proposed project, as determined above. Therefore, in accordance
with the provisions of Executive Order 12898 and FHWA Order
6640.23a, no further Environmental Justice analysis is
required." A 35 foot bascule bridge would not impact this
population versus the decision made for a 65 foot high-level
bridge.

84. FDOT within the PD&E document of a 65 foot High Level-
Fixed Bridge fails to comply with the County's Land Development
Code, as provided by the County's Comprehensive Plan for design
criteria in the village of Cortez. The code does not allow
creating a wall structure necessary for the 65 foot fixed bridge
that could be avoided with a 35 foot bridge. The design does not
comply with the community's vision. A 35 foot bascule bridge
would avoid impacts and not violate the code's intent versus the
decision made for a 65 foot high-level bridge.


85. FDOT failed to inform the public, and local elected
officials of the impact of noise and potential sound walls.
Walls from 8 to 18 feet may be required to mitigate sound. No
visual or design concepts were presented at the public hearings
and or meetings. The sound study is also bias to a 65 foot High
Level-Fixed Bridge in creating a comparison of impacts for a 35
foot drawbridge. The project limits of a 35 foot drawbridge
replaced within the same touchdown of the existing bridge would

have fewer impacts than the 65 foot High Level-Fixed Bridge. The 65 foot High Level-Fixed Bridge would increase the height vehicle travel lanes to over 20 feet, causing increase noise projections not considered in any study causing significant impacts to the human environment.

86.   FDOT fails to consider the significant impacts to residences with a wall within several feet of their homes as part of the bridge elevated structure causing significant impacts to the human environment.

87.   FDOT should have provided additional information and studies for mitigating noise at public informational meetings and before elected officials, and further changed project limits of the noise study based on the touchdown of the bridge options. Sound walls were not shown as part of video presentations or height of walls with location contained on design concepts.

## FOURTH CLAIM FOR RELIEF

### (FDOT failed to comply with NEMA Floodplain requirements)

88.   FDOT fails to consider the significant impacts of flood and wave impacts for a design of the 65 foot High Level-Fixed Bridge versus a 35 foot with and without noise walls. The 65 foot bridge would create more impacts from waves and flood events than a 35 foot bridge. These types of impacts from a 65

foot bridge will negatively impact properties that a 35 foot drawbridge would not. A study of the impacts of flood and wave action are required for a PD&E.

*89.* **FDOT's manual has specific criteria stating** – *Floodplains: Determine if the 100-year floodplain is present within the project and summarize the project involvement with the floodplain based on the results of the floodplain analysis in accordance with Part 2, Chapter 13, Floodplains. Provide a summary of the Location Hydraulics Report (LHR) and the floodplains finding, as applicable. Add the LHR as Technical Material and include a floodplains map as necessary. If the project involves a regulatory floodway, summarize the project's consistency with the floodway and coordination with Federal Emergency Management Agency (FEMA) and local floodway management agencies in accordance with Part 2, Chapter 13, Floodplains.*

**90.** FDOT failed to comply with the provisions for a project within a Floodplain. Title 23 CFR Part 650A requires location hydraulic studies for all alternatives containing floodplain encroachments and for those actions which would support base floodplain development, commensurate with the significance of the risk or environmental impact.

**91.** **FDOT's PD&E manual specify procedures for which were not followed to comply with NEPA requirements:**

***13.2.2.2 Significant Encroachment*** *–Evaluation to determine the significance of each encroachment should include assessment of construction or flood related impacts to lives, property, and transportation facilities that serve emergency vehicles or provide emergency evacuation. Additionally, the evaluation should include assessment of construction or flood related impacts to determine the potential for loss or gain to natural and beneficial floodplain values.* ***13.2.2.3 Only Practicable Alternative*** *Finding Pursuant to 23 CFR § 650.113, a proposed alternative which includes a significant encroachment will not be approved unless it is the only practicable alternative. The finding of the only practicable alternative must be approved by FHWA. To obtain the finding, the District must provide the recommendation and supporting information to the District's FHWA Transportation Engineer with a copy to OEM.*

## FIFTH CLAIM FOR RELIEF

**(FDOT failed to inform elected officials of details of the PD&E review and focused on a video without identifying impacts to the community failing to satisfy NEPA requirements)**

**92.**   FDOT failed to produce accurate information at the meetings of the Manatee County Commission, City of Bradenton Beach and the Sarasota Manatee MPO. Presentation material presented to the elected officials did not contain critical information to evaluate the different design options, and did not include the impacts of a noise walls or the wall effect of the bridge within the Cortez historical village, including flood water impacts. The videos FDOT produced at the presentations were bias to a 65 foot High Level-Fixed Bridge. No official vote has been made by a government in support of the 65 foot fixed bridge including the MPO, accepting the PD&E.

### SIXTH CLAIM FOR RELIEF

**(FDOT failed to comply with NEPA and prepare an EIS for a "major" federal action expected to "significantly" affect the quality of the human environment. 42 U.S.C. § 4332(2)(C))**

93.   In broad terms, "whether a major federal action will 'significantly' affect the quality of the human environment" requires the relevant agency "to review the proposed action in the light of at least two relevant factors: (1) the extent to which the action will cause adverse environmental effects in excess of those created by existing uses in the area affected by it, and (2) the absolute quantitative adverse environmental

effects of the action itself, including the cumulative harm that results from its contribution to existing adverse conditions or uses in the affected area." *Hanly v. Kleindienst*, 471 F.2d 823, 830- 31 (2d Cir. 1972).

94.   This analysis "requires considerations of both context and intensity." 40 C.F.R. § 1508.27. "Significance varies with the setting of the proposed action" and "[b]oth short- and long-term effects are relevant." *Id.* §1508.27(a). "Intensity" concerns "the severity of impact." *Id.* § 1508.27(b). CEQ regulations identify ten factors to be considered in evaluating intensity:

(1) Impacts that may be both beneficial and adverse. …

(2) The degree to which the proposed action affects public health or safety.

(3) **Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.**

(4) **The degree to which the effects on the quality of the human environment are likely to be highly controversial.**

(5) **The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.**

(6) The degree to which the action may establish a precedent for future actions with significant effects ….

(7) **Whether the action is related to other actions with individually insignificant but cumulatively significant impacts.** …

(8) **The degree to which the action … may cause loss or destruction of significant scientific, cultural, or historical resources.**

(9) The degree to which the action may adversely affect an endangered or threatened species or its habitat ….

(10) Whether the action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment.

95.    FDOT did not consider the significant impacts created by the 65 fixed foot replacement bridge. The 65 foot replacement bridge is not likely highly controversial but is highly controversial (over 70 percent of the survey resulted in opposition to the replacement fixed bridge).

96.    FDOT did not consider the significant impacts created by the 65 fixed foot replacement bridge to which the action … may cause loss or destruction of significant cultural or historical resources. The Village of Cortez and the City of Bradenton Beach contain Historical resources. FDOT did evaluate

historical structures but failed to properly evaluate the impact to the historic community, and its culture. Changing a quaint historical village will a massive elevated roadway for several hundred feet will cause significant cultural impacts, change road connections, and cause unknown additional noise impacts from an elevated roadway, with additional light pollution.

97.   FDOT did not consider the significant impacts created by the 65 fixed foot replacement bridge to which the action will create possible effects on the human environment that are highly uncertain or involve unique or unknown risks. From the changes in wave energy in this coastal community to cultural and historical impacts, significant impacts are certain and some are possible effects on the human environment that are highly uncertain or involve unique or unknown risks that were not made part of the PD&E as required by NEPA. What we know is that the noise study was done but solutions were not presented and only commitments in the future poising unknown risks not known at the time it is required by NEPA. There is no analysis for light pollution, shading from a massive wall, changes to the cultural goals contained in the Manatee County Governments' Land Development Codes to preserve the cultural gem; the historical village of Cortez requiring land use restrictions to maintain its distinct character and cultural assets. These Codes would not allow a commercial structure of this size and mass. It is

not the character of the community, and causes significant risk, unknown, and known, that by itself prohibits by NEPA a categorical exclusion. NEPA requires an EIS. 42 U.S.C. § 4332(2)(C)).

98.   FDOT's action and determination was "arbitrary or capricious", without taking a hard look at the significant impacts and producing mitigation for these impacts, provides changes or safeguards in the project sufficiently to reduce the impact to a minimum, and or further evaluation as required with an EIS. The decision by FDOT was not based on a consideration of the relevant factors and there has been a clear error of judgment.

99.   When comparing the 2 viable bridge replacement option the 35 foot drawbridge would minimize the significant impacts, reducing them to a minimum, and therefore comply with the NEPA requirements for a Type 2 categorical exclusion.

100.   FDOT determination on the LDCA, ignored consideration of the relevant factors, and created a bias based on price of the 65 foot fixed bridge costing several million dollars less. The NEPA process does not provide a specific weight to be placed on cost, however the least costly option was chosen without a hard look at the significant impacts a 65 foot bridge creates versus the more costly option a 35 foot drawbridge that would have less of a steep grade for pedestrians and seniors, not

alter a historical community, minimize the aesthetic impacts,
not increase distance of travel by pedestrians for several
hundred feet, alter roadway alignments with unknown safety
impacts from a flawed design, not increase light pollution and
noise  from an elevated roadway, not violate the goals contained
in the Manatee County Land Development code, not restrict up to
10 percent of the vessels using the waterways(creating loss of
recreation and business), and not impact seniors and low income.
This option would comply with NEPA and a Type 2 categorical
exclusion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

    a. Enter a declaratory judgment that:

        i.  FDOT acting under the MOU with FHWA, has violated
          and is violating NEPA and the APA;

      ii.  The LDCA for a 65 foot fixed bridge will have
          significant impacts and does not meet the
          requirements for a Type 2 Categorical Exclusion
          Determination under 23 U.S.C. s. 327;

    iii.  Vacate the Type 2 Categorical Exclusion
          Determination;

     iv.  Vacate the acceptance/approval of the LDCA;

v. Issue any other appropriate relief;

vi. Set aside the Type 2 Categorical Exclusion
Determination under 23 U.S.C. s. 327;

or at the discretion of the court

vii. Provide that the 35 foot drawbridge, a viable
option will not cause significant impacts
compared to the 65 foot fixed bridge and this
relief granted to Plaintiffs.

Respectfully submitted,

.

JOE KANE, pro se
12004 45 Avenue W.
Cortez FL 34215

LINDA MOLTO, pro se
4519 124th St. W.
Cortez FL 34215

Jane von Hahmann, pro se
4428 119th St. W
Cortez FL 34215
, all pro se

JOSEPH MCCLASH, pro se
711 89 Street NW
Bradenton, Florida 34209
941.915.0684
joemcclash@GMAIL.COM

By signing below, I authorize the filing of this complaint with the UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, Tampa Division, as a pro se plaintiff.

I authorize Joseph McClash, pro se plaintiff to file the actual complaint in person, we join in all pro se.

_____  Date: 3/7/20

JOE KANE, pro se
12004 45 Avenue W.
Cortez FL 34215

_____  Date: 3/7/20

LINDA MOLTO, pro se
4519 124th St. W.
Cortez FL 34215

_____  Date: 3/6/2020

Jane von Hahmann, pro se
4428 119th St. W
Cortez FL 34215

_____  Date: 3/7/2020

JOSEPH MCCLASH, pro se
711 89 Street NW
Bradenton, Florida 34209
941.915.0684

46